David B. Rosenbaum, 009819
Eric M. Fraser, 027241
Osborn Maledon, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2794
602-640-9000
drosenbaum@omlaw.com
efraser@omlaw.com

James F. Hurst  (*pro hac vice* forthcoming)
Diana M. Watral (*pro hac vice* forthcoming)
Robin McCue (*pro hac vice* forthcoming)
Ryan Moorman (*pro hac vice* forthcoming)
James Hileman (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
312-862-2000
diana.watral@kirkland.com
james.hurst@kirkland.com
robin.mccue@kirkland.com
ryan.moorman@kirkland.com
jhileman@kirkland.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Eli Lilly and Company, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| Strive Pharmacy LLC d/b/a Strive Compounding Pharmacy, and Strive Specialties Inc., | |
| Defendants. | |

1.     For nearly 150 years, Lilly has developed and delivered trusted and innovative medicines that save and improve patients' lives.   Lilly's proprietary MOUNJARO® and ZEPBOUND® are two first-of-their-kind medicines indicated for serious conditions afflicting millions of Americans.  Approximately one in ten Americans

have type 2 diabetes, and four in ten Americans are obese.  To advance the treatment of these chronic conditions, Lilly used its extensive experience and years of research to develop a new class of medicines that target patients' GLP-1 (glucagon-like peptide-1) and GIP (glucose-dependent insulinotropic polypeptide) receptors.  These medicines activate both receptors to improve blood sugar control and reduce appetite and food intake.  FDA has approved these medicines for specific, indicated conditions and populations: MOUNJARO® for adults with type 2 diabetes, and ZEPBOUND® to treat chronic weight management and obstructive sleep apnea in certain adults.

2.    Both MOUNJARO® and ZEPBOUND® contain the active pharmaceutical ingredient tirzepatide.  They are the only FDA-approved medications that contain tirzepatide.  Before and after obtaining FDA approval for MOUNJARO® and ZEPBOUND®, Lilly undertook years of randomized controlled clinical trials evaluating the safety and effectiveness of its tirzepatide medicines administered by subcutaneous injection on thousands of patients.

3.    Strive Pharmacy LLC and Strive Specialties Inc. (collectively "Strive") operate a compounding pharmacy that manufactures and sells compounded weight-loss drugs to potential patients, including a compounded tirzepatide drug that includes vitamin B12 and glycine additives ("Strive's Tirzepatide Blend").  Unlike MOUNJARO® and ZEPBOUND®, Strive's Tirzepatide Blend has never been reviewed, much less approved, by FDA, nor has it been clinically tested or proven to result in demonstrable weight loss or to have a specific safety or side-effect profile.

4.    Strive's entire business model hinges on its claim to fill a need for bespoke medications that is not being met by a "one-size-fits-all" approach to medicine, which Strive claims is the focus of modern pharmaceutical companies.  Specifically, Strive claims to offer compounded weight-loss drugs—including its Tirzepatide Blend—that are "tailored medicine" "crafted for [the patient], not the masses" and that the medicines it sells are specifically "formulated to meet [a] patient's specific needs" or "create[d]" to

fulfill "[a patient's] preferences and tastes."[1] Even worse, Strive tells patients that this alleged medication "offer[s] flexibility that most big pharma options simply can't." Not content to just tout the alleged benefits of its own products, Strive goes even further, telling consumers that the personalized nature of its compounded drugs, including its Tirzepatide Blend, makes Strive's drugs *"safer and better for you"* than branded medicines sold by pharmaceutical companies like Lilly. In reality, Strive mass produces its Tirzepatide Blend well before filling an individual patient's prescription, and every consumer gets the exact same medicine regardless of any individualized need.

5.    Strive also dupes consumers regarding the allegedly "proven" results its medicines offer. In particular, Strive expressly and implicitly communicates that its drugs are clinically tested and proven safe and effective—even more safe and effective than Lilly's FDA-approved medicines. In fact, Strive does not have the very testing that it alludes to in its advertising, because no clinical study has ever evaluated the safety and efficacy of Strive's Tirzepatide Blend.

6.    Strive's advertising also makes powerful establishment claims, *i.e.*, claims that expressly and implicitly tell consumers that Strive actually has tests and studies to prove that Strive's Tirzepatide Blend itself has specific, measurable, and scientifically valid results showing a safe side-effect profile and demonstrable weight loss. Establishment claims are statements that say or suggest that a product's effectiveness or other attributes are supported by testing, making them particularly persuasive to consumers. That is why the law is clear: failure to have the testing referenced in advertising renders claims false. Yet, although Strive legally and logically must actually have the testing that it touts to consumers, it has no such testing. Therefore, its claims that its Tirzepatide Blend has been clinically tested and scientifically proven are false and misleading.

---

[1]      https://www.strivepharmacy.com/

7.      Further, Strive tells consumers that its untested, unproven Tirzepatide Blend is "better" than Lilly's tirzepatide-based medicines. In fact, Strive expressly states that its "tested" product is "safer and better for you" than branded medications, like Lilly's medicines.  The undeniable message communicated in Strive's advertising is that it has testing that proves its Tirzepatide Blend offers superior results to Lilly's own tirzepatide-based medicines.  In fact, there is no clinical study assessing the safety profile and outcomes of Strive's Tirzepatide Blend at all, much less in comparison to Lilly's FDA-approved tirzepatide-based medicines, and Strive's claims regarding the alleged superiority of its Tirzepatide Blend are false.  Given that Lilly offers its FDA-approved medicines at a comparable price point, Strive's false claims of superiority are indisputably both intended and likely to steer deceived customers to Strive's product over Lilly's FDA-approved medicines.

8.      Notably, FDA has taken issue with the very types of claims that Strive is making—i.e., claims regarding the safety and effectiveness of compounded products and the allegedly personalized nature of these drugs.  On September 16, 2025, FDA publicly posted dozens of warning letters sent to retailers of compounded drugs; these letters repeatedly identify as "false and misleading" numerous advertisements containing mirror-image statements to Strive's claims, especially those that suggest an equivalence in safety or effectiveness to an FDA-approved product.  The advertisements referenced in these warning letters included statements promoting compounded drugs as containing "clinically proven"  or "doctor trusted"  ingredients; being "clinically proven"  or "clinically shown"; being "recognized for effective weight loss"; "backed by extensive clinical research"; working by "mimic[ing] a naturally occurring hormone in the body"; and being "customized";  "personalized";  or "custom" products.  Strive's false and misleading claims—for example, that its Tirzepatide Blend undergoes "rigorous[] testing," is "tailored medicine made precisely for [the patient]" and is "safer and better for you" than Lilly's medicines—are indistinguishable.

9.      Strive's advertising makes egregious misrepresentations to a targeted and vulnerable audience seeking to improve their health through weight-loss programs. Strive's conduct directly compares its drugs to Lilly's safe and effective, FDA-approved medicines—using false claims of scientific validity and superiority—and results in potential patients being lured away from Lilly's medicines under false pretenses, causing Lilly competitive injury. Strive's brazen use of powerful terms such as "rigorous[] testing" or that is a "better" product than Lilly's tirzepatide-based medicines—without having any of the very testing Strive claims to have—is deceptive and illegal.  To stop Strive's deception, Lilly brings this action pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.

## THE PARTIES

10.      Plaintiff Lilly is a corporation organized and existing under the laws of Indiana and has its principal place of business in Indiana.

11.      Defendant Strive Pharmacy LLC is a limited liability company organized under the laws of Arizona with its principal place of business located at 1275 E. Baseline Road, Suite 104, Gilbert, AZ 85233.  Strive operates and conducts business in Arizona, including by promoting and selling its tirzepatide product here.

12.      Strive Specialties Inc. is a corporation organized under the laws of Wyoming.  Strive Specialties Inc. owns Strive Pharmacy LLC.[2]  Strive Specialties Inc.'s officers are also the sole members of Strive Pharmacy LLC.[3]

## JURISDICTION AND VENUE

13.      The Court has subject matter jurisdiction over the Lanham Act cause of action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331.

---

[2]      *Texas Pharmacy License # 3564335643*, Texas State Board of Pharmacy, https://www.pharmacy.texas.gov/dbsearch/phy_zoom.asp?id=35643 (last visited Oct. 10, 2025).

[3]      *Strive Specialties Inc.*, Wyoming Secretary of State, https://wyobiz.wyo.gov/business/FilingDetails.aspx?eFNum=239037077026148141192 08704714720520324019621618 (last visited Oct. 10, 2025).

14.    Strive Pharmacy LLC is subject to personal jurisdiction in Arizona because it is "at home" here.  As a limited liability company, Strive Pharmacy LLC is a citizen "of every state of which its owners/members are citizens."  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).    Each member of Strive Pharmacy LLC—Nathan Hill and Michael Walker—resides in Arizona, meaning Strive Pharmacy LLC is a citizen of this state.  Strive Pharmacy LLC also represented to the United States District Court for the District of Delaware that it is subject to personal jurisdiction in Arizona.[4]

15.    Alternatively, Strive Pharmacy LLC is subject to personal jurisdiction in Arizona because it has purposefully availed itself of the privilege of conducting activities in Arizona and sought the protection and benefits of its laws.  Strive Pharmacy LLC is licensed to conduct business in the state of Arizona and has a registered agent in the state. Strive Pharmacy LLC operates and conducts business in Arizona, including by promoting and selling its tirzepatide product here.  As one of Strive Pharmacy LLCs own members put it, "Strive is an Arizona company based in Arizona.  Indeed, Strive's entire executive team is based in Arizona, which is where all decisions regarding the marketing of Strive's products are made and then implemented."[5]  Strive Pharmacy LLC itself has argued that "any allegedly misleading statements all arose in Arizona, where Strive is based and created the website and posts at issue."[6]

16.    Strive Specialties Inc. is subject to personal jurisdiction in Arizona because it has purposefully availed itself of the privilege of conducting activities in Arizona and sought the protection and benefits of its laws.  Strive Specialties Inc. is licensed to conduct business in the state of Arizona and has a registered agent in the state.  Strive Specialties

---

[4]    *See, e.g.* Strive Pharmacy Br. ISO Mot. To Dismiss, *Eli Lilly & Company v. Strive Pharmacy, LLC*, 25-cv-00401, Dkt. No. 8 at 5-6, 12, 24 (D. Del. May 28, 2025) (stating Lilly's complaint "could and should have" been filed in Arizona."

[5]    Strive Pharmacy Br. ISO Mot. To Dismiss, *Eli Lilly & Company v. Strive Pharmacy, LLC*, 25-cv-00401, Dkt. No. 8 at 6 (D. Del. May 28, 2025).

[6]    *Id.* at 24.

Inc. operates and conducts business in Arizona, including by promoting and selling its tirzepatide product here.  As Strive Specialties Inc.'s CEO, Nathan Hill, explains:  "Strive is an Arizona company based in Arizona.  Indeed, Strive's entire executive team is based in Arizona, which is where all decisions regarding the marketing of Strive's products are made and then implemented."[7]

17.    Venue is proper in Arizona pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to these claims substantially occurred here.  For Strive, "Arizona is where all important decisions are made, whether that's major personnel decisions, decisions about the services and compounds we may provide, which health care providers we'll partner with, or how we'll market our services and who we might market them to."[8]

## FACT ALLEGATIONS

## I.    LILLY'S INJECTABLE TIRZEPATIDE MEDICINES

### A.    Lilly's Long History of Developing and Manufacturing Safe and Effective Medicines

18.    Lilly is an international medicine company and pharmaceutical manufacturer.  Throughout its nearly 150-year existence, Lilly has pioneered countless life-changing discoveries.  Today, Lilly's medicines help tens of millions of patients across the globe.

19.    Lilly manufactures its medicines under strict controls in state-of-the-art facilities, which employ thousands of highly specialized personnel to ensure that Lilly's medicines meet its rigorous quality and safety standards.  Transforming active pharmaceutical ingredients, or API, into medicine is a complex, methodical, and science-based process.  Lilly follows Current Good Manufacturing Practices ("cGMP") across the design, monitoring, and control of manufacturing processes and facilities—from establishing robust quality management systems to obtaining quality raw materials and

---

[7]    Strive Pharmacy Br. ISO Mot. To Dismiss, *Eli Lilly & Company v. Strive Pharmacy, LLC*, 25-cv-00401, Dkt. No. 8 at 6 (D. Del. May 28, 2025).

[8]    Decl. of Nate Hill ISO Strive Pharmacy's Mot. To Dismiss, *Eli Lilly & Co. v. Strive Pharmacy, LLC*, 25-cv-00401, Dkt. No. 9 at ¶ 10 (D. Del. May 28, 2025).

detecting and investigating product quality deviations. Each step—from chemical synthesis of the API to formulation, device assembly, and packaging—requires extensive testing and controls and specialized equipment.

20. Lilly develops and manufactures its medicines in compliance with FDA oversight, the international gold standard for pharmaceuticals. It includes rigorous pre-approval testing for safety and effectiveness under specific conditions for use, routine FDA inspections of manufacturing facilities, adverse event reporting obligations, and post-market surveillance and studies. Additionally, Lilly's medicines must be, and always are, accompanied by important labels, instructions, and warnings, which themselves are approved by FDA.

**B.    The Clinical Trial Process Necessary to Safely Bring Medicines to Market**

21. Before a new prescription medication can be brought to market, it must be clinically tested through a rigorous series of studies designed to determine whether the medication is safe and effective for people to use and to receive FDA approval.

22. FDA approval is famously hard to earn. More than 90% of drug candidates ultimately fail.[9] It is also an enormously costly and time-intensive process. "On average, it takes 10–15 years and costs $2.6 billion to develop one new medicine."[10]

23. To begin, drug sponsors first subject the drug candidate to preclinical testing to determine if the product is reasonably safe for initial use in humans and if the drug candidate exhibits pharmacological activity that justifies commercial development. Based on the data derived from preclinical testing, the drug sponsor must apply for an "Investigational New Drug" (IND) designation from FDA before the drug candidate can move into the clinical trial stage, in which it is tested in human subjects through a series

---

[9]    Biotechnology Innovation Organization, *Clinical Development Success Rates and Contributing Factors 2011-2020* at 3 (Feb. 2021), https://tinyurl.com/bp5mb3xy (hereinafter "BIO 2021").

[10]    PhRMA, *Research and Development Policy Framework* (Sept. 2024), https://tinyurl.com/5eecdtm9.

of increasingly complex phases of studies, typically culminating in double-blind, multi-center, placebo-controlled clinical trials. The IND application requires disclosure of information pertaining to "the composition, manufacturer, stability, and controls used for manufacturing" the API contained in the drug candidate.[11] Once FDA grants the IND application, the clinical trial stage can begin using the same API disclosed in the IND application.

24. Phase I clinical trials typically evaluate the drug candidate's safety and generate data that will inform a range of doses that are safe for use in further clinical testing. This determination typically culls a large portion of drug candidates—for example, averaging across diseases, only 52% of drug candidates that make it through Phase I testing will progress to Phase II.[12]

25. Phase II trials are typically designed to preliminarily establish the effectiveness in addition to further confirming the safety of the drug for a particular indication over a range of doses and to develop additional data on its safety. Another swath of drug candidates is eliminated in Phase II; drug candidates for various diseases that make it through Phase II only progress to Phase III at rates between 15% and 48.1% depending on disease type.[13] Phase III trials are designed to confirm the safety and efficacy of a dose identified in Phase II trials in a much larger patient population as well as to monitor side effects.

26. Based on the data assembled during development in Phase I, Phase II, and Phase III clinical trials, a sponsor company can then submit a marketing application to FDA called a New Drug Application (NDA), where the sponsor requests that FDA approve the drug candidate for sale and marketing in the United States. As part of this application, the sponsor must provide a "composition statement" detailing the "full list of

---

[11] FDA, *Investigational New Drug (IND) Application (Sept. 16, 2025)*, https://www.fda.gov/drugs/types-applications/investigational-new-drug-ind-application.

[12] BIO 2021 at 7.

[13] BIO 2021at 7.

1    the articles used as components of such drug" and a "full statement of the composition of

2    such drug."[14]

3        27.   There is a scientific reason for the specificity of the information FDA

4    requires in approval of a medicine. Drugs purporting to contain the same active ingredient

5    can have different effects based on differences in API formulation or production, method

6    of administration, dosage form, and manufacturing specifications. Moreover, because the

7    ingredients in a drug can interact with one another, drugs with even the same API, but

8    different additives or ingredients, may differ significantly in their safety and effectiveness

9    profile. For this reason, the FDCA requires that generic drug applications show both (1)

10    that it uses the same API as a previously approved product but independently (2) that

11    there is sufficient evidence to conclude the generic is "bioequivalent" to the listed drug.

12    *See* 21 U.S.C. § 355(j)(2)(A)(ii), (iv). An applicant therefore has to show via valid

13    evidence that their generic drug will function the same in the human body as the listed

14    drug; they cannot rely solely on the fact that it uses the same API as a previously approved

15    product.

16        28.   To ensure that the drug candidate being sold to the public contains the same

17    specifications as the drug that was clinically tested, FDA conducts inspections to monitor

18    compliance with cGMP and reviews the drug's labeling to ensure appropriate disclosure

19    of side effects, warnings, and contraindications even after granting the NDA. FDA also

20    requires manufacturers to track and trace each finished product, to promptly report all

21    adverse events, and to conduct further post-approval studies. All of this is to ensure that—

22

23

24

25    ───────────

26    [14]    FDA, *Content and Format of Composition Statement and Corresponding Statement of Ingredients in Labeling in NDAs and ANDAs* (Apr. 2024),

27    https://www.fda.gov/regulatory-information/search-fda-guidance-documents/content-and-format-composition-statement-and-corresponding-statement-ingredients-labeling-

28    ndas-and

1    in FDA's words—"American consumers benefit from having access to the safest and

2    most advanced pharmaceutical system in the world."[15]

3        **C.    MOUNJARO® and ZEPBOUND®**

4        29.    FDA approved MOUNJARO® and ZEPBOUND® pursuant to Lilly's

5    marketing application, which was the culmination of the lengthy and expensive clinical

6    trial process described above that is designed to develop, study, and bring safe medicines

7    to patients.

8        30.    MOUNJARO® and ZEPBOUND® were approved after nearly a decade of

9    development and have undergone testing in 37 clinical trials, with more ongoing.  They

10    are two groundbreaking medicines consisting of a macromolecule Lilly discovered called

11    tirzepatide.  As formulated by Lilly, these tirzepatide medicines target patients' GLP-1

12    (glucagon-like peptide-1) and GIP (glucose-dependent insulinotropic polypeptide)

13    receptors.  Tirzepatide activates both receptors to improve blood sugar control and reduce

14    appetite and food intake.

15        31.    Both medicines meet critical patient needs.  MOUNJARO® is FDA-

16    approved to treat type 2 diabetes, and ZEPBOUND® is approved to treat chronic weight

17    management and obstructive sleep apnea in certain adults.  Today, Lilly manufactures,

18    markets, and sells MOUNJARO® and ZEPBOUND® throughout the United States,

19    among other places.

20        32.    Lilly is the only lawful source of mass-produced tirzepatide in the United

21    States.  Because tirzepatide is a new active ingredient not previously approved by FDA,

22    Lilly earned new chemical exclusivity for tirzepatide.  As a result, through at least May

23    13, 2027, FDA cannot accept an application from any other person for any other

24    tirzepatide product.

25        33.    MOUNJARO® and ZEPBOUND® are the only FDA-approved medicines

26    containing tirzepatide in the United States.  Lilly's tirzepatide medicines are injectables;

27    ────────────────────

28    [15]    FDA, *Development & Approval Process* (Aug. 8, 2022),
     https://www.fda.gov/drugs/development-approval-process-drugs.

11

they are administered via under-the-skin injections.  FDA has not approved, and Lilly does not sell, any tirzepatide product with additives like glycine or vitamin B12.

34.    Lilly exclusively owns the intellectual property rights related to MOUNJARO® and ZEPBOUND® and is the only lawful supplier of those medicines.

## II.    DRUG COMPOUNDING

### A.    Compounded Drugs Are Neither Clinically Tested Nor FDA-Approved

35.    Compounded drugs live at the other end of the regulatory spectrum: they are not FDA-approved, do not undergo clinical trials, are not made pursuant to cGMP, and are not subject to pharmacovigilance requirements like adverse event reporting. Indeed, FDA generally does not even know what compounded drugs are produced or sold in the United States, where they are made, or by whom.[16]

36.    Drug compounding is a "practice in which a licensed pharmacist, a licensed physician or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[17]  For example, if an individual patient is allergic to an ingredient in an FDA-approved medicine, a compounding pharmacy could produce a version of that medication that does not contain the allergen for that individual patient.

---

[16]    *See, e.g.*, Congressional Research Service, *Drug Compounding: FDA Authority and Possible Issues for Congress* (Jan. 5, 2018) ("[T]he majority of compounding facilities in the United States do not register with FDA ....  This means that FDA often is unaware of potential problems with the drug products or facility conditions unless the agency receives a complaint.").

[17]    FDA, *Human Drug Compounding* (May 15, 2025), https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.

1   37.    As FDA has made clear, "[c]ompounded drugs are not FDA-approved."[18]

2   FDA does not review compounded drugs to evaluate their safety, effectiveness, or quality

3   before they reach patients.

4   38.    Unlike FDA-approved medications, compounded drugs are also not tested

5   in preclinical studies or in clinical trials.  Further, compounding pharmacies are not

6   subject to cGMP, their facilities are not subject to inspections by regulatory authorities,

7   and they have no reporting requirements for adverse events.

8   39.    For these and other reasons, FDA has warned that "[c]ompounded drugs . .

9   . do not have the same safety, quality, and effectiveness assurances as approved drugs.

10  Unnecessary use of compounded drugs . . . exposes patients to potentially serious health

11  risks."[19]  FDA further advises that compounded drugs "should only be used to meet a

12  patient's needs if the patient's medical needs cannot be met by an available FDA-

13  approved drug."[20]

14  40.    The risks FDA has identified with compounded drugs generally are

15  heightened in the context of compound tirzepatide-based drugs because, on information

16  and belief, all tirzepatide used in compounded drugs is produced by foreign

17  manufacturers—generally in China.[21]  These foreign manufacturers are not subject to the

18  same quality controls as US-based tirzepatide manufacturers (like Lilly) and, as a result,

19

20  [18]    FDA, *Compounding and the FDA: Questions and Answers* (Sept. 16, 2025),
    https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-
21  and-answers.

22  [19]    FDA, *Compounding and the FDA:  Questions and Answers* (June 29, 2022),
    https://web.archive.org/web/20220702213650/https://www.fda.gov/drugs/human-drug-
23  compounding/compounding-and-fda-questions-and-answers.

24  [20]    FDA, *FDA Alerts Health Care Providers, Compounders and Patients of Dosing
    Errors Associated with Compounded Injectable Semaglutide Products* (July 26, 2024),
25  https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-
26  compounders-and-patients-dosing-errors-associated-compounded.

27  [21]    FDA,    *National    Drug    Code    Directory*,
    https://www.accessdata.fda.gov/scripts/cder/ndc/dsp_searchresult.cfm  (current  through
28  Sept. 28, 2025).

1  produce tirzepatide with little to no oversight.  Thus, the tirzepatide used in compounded
2  tirzepatide drugs may differ significantly from the tirzepatide used by Lilly in its
3  medicines, which is produced in compliance with all applicable federal and state
4  requirements.

5       41.    Indeed, FDA has identified a "concerning trend about non-compliance with
6  CGMP" from "API suppliers for compounding sites."[22]  "Over the past five years, 72%
7  of API manufacturing sites subject to FDA regulatory actions (e.g., warning letters,
8  import alerts, and regulatory meetings) were sites that exclusively supply compounding
9  pharmacies."[23]  This is notable because the sites "represent only 18% of API
10 manufacturers."[24]

11      42.    On September 5, 2025, FDA went further and expressed "serious concerns
12 with compounded versions of semaglutide and tirzepatide, including dosing errors, use of
13 unapproved salt forms and adverse events—some requiring hospitalization."[25]
14 According to FDA, these concerns were due in substantial part to the use of "illegal GLP-
15 1 active ingredients imported from overseas" by compounders formulating weight-loss
16 drugs in the United States.[26]  In an effort to prevent these dangerous, foreign-
17 manufactured active ingredients from being used to compound weight-loss drugs, FDA
18 "established a 'green list' import alert to help stop potentially dangerous GLP-1 . . . active

19
20
21

---

22  [22]    U.S. Food & Drug Administration, Report on the State of Pharmaceutical Quality,
23  FY 2024, available at https://www.fda.gov/media/188236/download.

23  [23]    *Id*.

24  [24]    *Id*.

25  [25]    FDA, *FDA Launches Green List to Protect Americans from Illegal Imported GLP-
26  1 Drug Ingredients* (Sept. 5, 2025), https://www.fda.gov/news-events/press-
    announcements/fda-launches-green-list-protect-americans-illegal-imported-glp-1-drug-
27  ingredients.

28  [26]    *Id*.

1    pharmaceutical ingredients (APIs) from unverified foreign sources from entering the U.S.

2    market."[27]

**B.    Consumers Are Being And Have Been Deceived About Compounded Tirzepatide**

43.    The false and misleading promotion of compounded tirzepatide-based medicines has been prolific, and as a result consumers have been overwhelming deceived as to the safety and effectiveness of these untested, unapproved compounded drugs.

44.    For example, in 2025, the National Consumers League (NCL) conducted a survey of 1,498 women and found widespread confusion as to the nature of compounded GLP-1s.  For example, of the nearly fifteen hundred women surveyed, "71 percent hold the view that compounded GLP-1s must be tested and proven safe to be on the market," and over half believed that compounded GLP-1s are FDA-approved.[28]  The survey also found that 49% of women—and 54% of women with obesity—believe that compounded GLP-1s "have the same ingredients as the branded GLP-1 drugs," despite the fact that compounded GLP-1s are often formulated with untested and unapproved additives like glycine.[29]

45.    As the NCL noted, these views on compounded GLP-1s are false.  The NCL observed that "compounded versions [of medications] can be made with different ingredients or at different concentrations, potentially leading to ineffective treatment or adverse events."[30]  In explaining the nature of the deceit, NCL noted "[t]he truth is that compounded GLP-1s are held to lower safety standards than FDA-approved drugs and do

---

[27]    *Id.*

[28]    Nat'l Consumers League, *The Influence of Disinformation on Attitudes and Beliefs About Compounded GLP-1 Drugs: A Dose of Reality* at 6 (May 2025), https://nclnet.org/wp-content/uploads/2025/05/The-Influence-of-Disinformation-on-Attitudes-and-Beliefs-About-Compounded-GLP-1-Drugs-Survey-Results.pdf.

[29]    *Id.*

[30]    *Id.*

1  not undergo premarket FDA review, a requirement for branded drugs to be on the
2  market."[31]

3      46.    A similar conclusion was reached by a study of compounded GLP-1
4  advertising conducted by the JAMA Health Forum, which found that most websites
5  advertising such drugs "provided limited safety information and unauthorized efficacy
6  claims."[32]  Based on these findings, the study recommended that FDA "require websites
7  to explicitly disclose and define compounding, including lack of FDA approval; institute
8  unique naming conventions for compounded medications; and be given greater authority
9  to act against misleading compounded medication advertising."[33]

10      47.    Recently, FDA agreed and called out prolific false and misleading
11  advertising of compounded drugs like those Strive sells.  For instance, on September 16,
12  2025, FDA publicly posted warning letters sent to various compounders and telehealth
13  companies selling compounded weight-loss drugs, explaining that advertising statements
14  mirroring those made in Strive's advertising are "false or misleading" statements.  The
15  letters repeatedly faulted compounded-drug sellers for stating or implying that their
16  products were "the same as an FDA-approved product when they are not."[34]

17      48.    For example, FDA warned that advertisements promoting compounded
18  weight loss drugs as containing "clinically proven ingredients"[35]; being "clinically

---

[31]    *Id.*

[32]    JAMA Network, *Online Advertising of Compounded Glucagon-Like Peptide-1 Receptor Agonists* (Jan. 17, 2025), https://jamanetwork.com/journals/jama-health-forum/fullarticle/2829225.

[33]    *Id.*

[34]    FDA, Warning Letter to Lovely Meds, Inc. (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/lovely-meds-inc-dba-lovely-meds-09092025.

[35]    FDA, Warning Letter to Hims & Hers, Inc. dba Hims (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hims-hers-health-inc-dba-hims-09092025.

proven" or "clinically shown"[36]; being "recognized for effective weight loss"[37]; "delivers the same active ingredient found in the leading GLP-1 weight loss medications – without the need for injections,"[38] and "backed by extensive clinical research"[39] were all false and misleading because they imply that the compounded drug products "are the same as an FDA-approved product when they are not."[40]

---

[36]     FDA, Warning Letter to TRYM Health, Inc. dba TRYM Health (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/trym-health-inc-dba-trym-health-09092025; FDA, Warning Letter to Healthy Male (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/healthy-male-09092025; FDA, Warning Letter to EvoLife Wellness (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/evolife-wellness-715507-09092025; FDA, Warning Letter to Curex (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/curex-09092025; FDA, Warning Letter to Healthon Inc. dba Healthon (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/healthon-inc-dba-healthon-09092025; FDA, Warning Letter to Slendid (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/slendid-09092025; FDA, Warning Letter to The HCG Institute (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hcg-institute-09092025; FDA, Warning Letter to Lyfe Rx (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/lyfe-rx-09092025.

[37]     FDA, Warning Letter to Healthy Male (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/healthy-male-09092025.

[38]     FDA, Warning Letter to Bioverse, Inc. dba Bioverse (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/bioverse-inc-dba-bioverse-09092025.

[39]     FDA, Warning Letter to Elevate Your Wellness LLC, dba Elevated (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/elevate-your-wellness-llc-dba-elevated-09092025.

[40]     *Supra* notes 35-39.

49.    FDA also warned that advertisements promoting compounded weight loss drugs as being "customized";[41] "personalized";[42] or "custom" products[43] were false and misleading because they imply that the compounded drug products "are the same as an FDA-approved product when they are not."[44]

50.    The categories of claims that FDA has found are false and misleading are the very same types of claims that Strive has put into the market.  Indeed, there is no material difference between Strive's claims that its medicine is "personalized," "rigorously tested," or "safer and better" than Lilly's FDA-approved medicines and the statements flagged by FDA as false and misleading.

## III.    STRIVE'S FALSE AND MISLEADING CLAIMS

51.    Strive is a compounding pharmacy that purports to "support real people in transforming their health realities," by offering "sustainable weight loss drugs" that are "designed with outcomes in mind."[45]

52.    Strive's website, located at https://www.strivepharmacy.com/, tells consumers that it offers "[t]ailored medicines for *powerful* outcomes."[46]

---

[41]    FDA, *Warning Letter to Fancy Meds, LLC dba Fancy Meds* (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/fancy-meds-llc-dba-fancy-meds-09092025;    FDA, *Warning Letter to directmeds.com, Inc. dba DirectMeds* (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/directmedscom-inc-dba-directmeds-09092025.

[42]    FDA, *Warning Letter to Elevate Your Wellness, dba Elevated* (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/elevate-your-wellness-llc-dba-elevated-09092025.

[43]    FDA, *MedClub by Dr. Jenn* (Sept. 9, 2025), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/medclub-dr-jenn-09092025.

[44]    *Supra* notes 41-43.

[45]    Strive Pharmacy, *Patients*, https://www.strivepharmacy.com/patients (last visited Oct. 21, 2025).

[46]    Strive Pharmacy, https://www.strivepharmacy.com/ (last visited Oct. 21, 2025).

18

1

2

3

4

5

6



7

8        53.    On its homepage, Strive expressly tells consumers that it offers drugs that

9    provide "better outcomes" than competitor medications that take a "one-size-fits-all

10   approach to medicine."[47]



11

12

13

14

15

16

17

18

19       54.    Strive also promotes its individual drugs, including its Tirzepatide Blend,

20   throughout its false advertising.[48]  Specifically, in promoting its Tirzepatide Blend, Strive

21   has made and continues to make numerous false statements throughout its advertising

22   pertaining to the inherent nature and quality of its Tirzepatide Blend.  These include

23   falsely telling consumers that (A) the medicine prescribed as Strive's Tirzepatide Blend

24   is clinically tailored and compounded specifically for each individual patient, and (B)

25   _____

26   [47]    *Id.*

27   [48]    Strive Pharmacy, *Tirzepatide/Glycine/B12,*
     https://www.strivepharmacy.com/medications/tirzepatide-glycine-b12 (last visited Oct.

28   21, 2025).

19

Strive's Tirzepatide Blend is clinically tested and proven to be safe and effective for weight loss. None of this is true. These false statements—each category of which directly refers to or claims superiority over Lilly's FDA-approved medicines—go to the inherent nature of Strive's drugs and deceives consumers.

55.    A compilation of representative examples of Strive's false advertising is discussed below and attached hereto as Exhibit A.

**A.    Strive's False Claims Regarding the "Personalized" Nature of its Tirzepatide Blend**

56.    Strive claims that its Tirzepatide Blend is a personalized drug compounded specifically and individually for each customer when that is simply not the case.

57.    Compounders are not permitted to mass produce compounded medications. Rather, each medicine should be made specifically for the identified patient based on an identified medical need that renders the commercially available FDA-approved medicine inappropriate specifically for them. There is a narrow exception to this rule that allows certain compounders to mass produce copies of FDA-approved drugs when the branded medication appears on FDA's drug shortage list at the time of compounding, distribution, and dispensing. 21 U.S.C. § 353(b).

58.    Lilly's tirzepatide medicines appeared on the FDA's drug shortage list for a time, but no longer. On October 2, 2024, FDA determined that the shortage for tirzepatide injection products, including for Lilly's medicines, had ended.[49] After a group of compounders sued FDA seeking to enjoin its removal of tirzepatide from the shortage list, FDA reconsidered its decision.[50] FDA then conducted a thorough reevaluation of the tirzepatide supply in the United States and determined on December 19, 2024 that the

---

[49]    FDA, *Resolution of Tirzepatide Injection Product Shortage and Supply Status* (Dec. 19, 2024), https://www.fda.gov/media/185577/download at 1.

[50]    *Id.*

1  shortage of tirzepatide injection products had been resolved.[51]  Thus, compounders cannot

2  mass produce copies of Lilly's medicine.

3       59.    Aware of this limitation, Strive falsely claims its products are

4  "personalized," rather than mass produced.   But Strive's personalization marketing

5  campaign has nothing to do with the formulation of its Tirzepatide Blend.  Instead, it is

6  merely a marketing tactic to appear in compliance with the law while still selling mass-

7  produced compounded tirzepatide now that the shortage is over.

8       60.    To be clear, Lilly is not in this lawsuit challenging Strive's compliance (or

9  lack thereof) with the FDCA.   The point is that Strive has intentionally chosen its

10  advertising to look like it is engaged in lawful practices while in fact mass producing and

11  selling a product that does not match its advertising claims.   In calling its Tirzepatide

12  Blend tirzepatide injections "personalized," Strive's advertising conveys the undeniable

13  message to consumers that the medicine inside each vial of its Tirzepatide Blend contains

14  a unique mixture of ingredients that is compounded specifically to each patient.  It does

15  not.

16       **1.    *Strive's false personalization advertisements***

17       61.    Strive's deception begins on the home page of its website where the first

18  thing a visitor sees is the express and false statement that Strive provides "tailored

19  medicine for *powerful* outcomes."[52]

20

21

22

23

24

25

26

27  [51]    *Id.*

28  [52]    Strive Pharmacy, https://www.strivepharmacy.com/ (emphasis in original).



62.     This same message is repeatedly communicated throughout the homepage of Strive's website, including through statements proclaiming that Strive "take[s] medicine personally" and "reject[s] the one-size-fits-all approach to medicine—because more options mean better outcomes."

63.     In the "Frequently Asked Questions" section at the bottom of the homepage of Strive's website, Strive suggests that it is frequently asked how "the medication customization process work[s]," which Strive answers by explicitly stating that it

1    "compounds what [providers] prescribe" and that its drugs are "formulated to meet [a]

2    patient's specific needs."[53]



How does the medication customization process work at Strive?    —

If you're a patient:
Talk to your provider about working with Strive and exploring medication options that interest you. You can also browse our directory of providers already partnering with Strive to find someone who understands what tailored medication regimens can look like for you.

If you're a provider:
Customization begins with your clinical expertise. Strive offers thousands of patient-tailored, outcome-oriented compounded formulations.

We compound what you prescribe—formulated to meet your patient's specific needs per your instructions, with the highest standards of precision and care.

Have questions? Call your local Strive Pharmacy. We're here to support both practices and patients, every step of the way.

11    64.    In other words, Strive expressly tells consumers that the medicine they

12    provide is specifically compounded for a particular patient *after* they receive an

13    individual, specific prescription for that particular patient.  For its mass-compounded

14    Tirzepatide Blend, that is literally false and entirely misstates how Strive actually

15    manufactures the drug, which as discussed below, is mass produced.

16    65.    Also in the Frequently Asked Questions section of its homepage, Strive

17    responds to the question "what is compounding" by claiming that compounding allows

18    Strive to "customize [a customer's] *medication's ingredients and dosage form*" and

19    provides Strive with the ability to "combine multiple medications, eliminate common

20    allergens, address multiple health concerns with a single formulation, or tailor [a

21    customer's] dose."[54]  It explicitly distinguishes its purported process from "mass-

22    produced" medications.

---

27    [53]    *Id.*

28    [54]    *Id.*

23



66.     Strive doubles down on its "About" page.  There, Strive characterizes its drugs as "tailored medicine[s] made precisely <u>for you</u>" and claims to "approach compounding from the conviction that life isn't one-size-fits-all, and neither is medicine."[55]



---

[55]     Strive Pharmacy, *About*, https://www.strivepharmacy.com/about (last visited Oct. 8, 2025) (emphasis in original).

67.    Strive repeats these false and deceptive claims when promoting its weight management drugs, including specifically in connection with its Tirzepatide Blend.  For example, Strive prominently and falsely promotes its weight management drugs as being "personalized for real results" and noting that because "[n]o two bodies are the same . . . weight management shouldn't be one-size-fits-all."[56]



68.    Directly under this statement on the "Weight Management" tab of Strive's website is a picture of the various weight-loss drugs that Strive offers, including its Tirzepatide Blend:

69.    Directly below the pictures of its weight loss drugs—including its Tirzepatide Blend—on its "Weight Management" tab for providers, Strive claims that it

---

[56]    Strive    Pharmacy,    *Patients* – *Weight    Management,* https://www.strivepharmacy.com/patients/weight-management-medications (last visited Oct. 21, 2025).

1    "work[s] with you and your doctor to develop a personalized path," which it then
2    describes as "creating a medication amenable to [a customer's] preference and taste,"
3    "formulating custom dosages based on [a customer's] unique requirements," and
4    performing "compounding services . . . uniquely tailored based on [a customer's]
5    needs."[57]



19    70.    In other words, specifically in connection with its weight-loss drugs, Strive
20    expressly tells consumers that the Tirzepatide Blend the patient receives from Stive
21    results from an individualized process of formulation and compounding specifically for
22    that individual patient.

23    71.    These claims convey the literally false message that the medicine contained
24    within each vial of Strive's Tirzepatide Blend is specially compounded after an
25    assessment of each patient's particularized needs to contain a unique blend of ingredients.
26    Indeed, according to Strive's advertising, patient needs are assessed and then specialized

---

[57]    *Id.*

drugs are compounded containing a customized formulation of ingredients specifically tailored to meet those needs. These advertisements clearly communicate that the medicine—and not the prescription process needed to obtain the medicine—is specifically formulated for each patient. *See, e.g., Eli Lilly & Co. v. Adonis Health, Inc.*, No. 25-CV-03536-JST, 2025 WL 2721684, at *8 (N.D. Cal. Sept. 24, 2025) (finding advertising statements promoting compounded drug as a "patient-specific" "tailored" or "individualized treatment" would be "understood by any linguistically competent person" to mean that advertiser "specifically creates individualized medication plans for each patient").

72.     Even worse, Strive's advertising explicitly and implicitly claims that its "personalized" medicine is ***better*** for the patient than standardized medicines like Lilly's MOUNJARO® and ZEPBOUND®.

73.     For example, as noted above, Strive expressly tells consumers that, because its medicines are personalized, it "generates medicine that has fewer side effects" than mass produced medicines, necessarily implying that its medicines are safer for the patient. Yet Strive itself mass produces medicines, and thus its medicines are neither personalized, nor safer with less side effects.

74.     Further, Strive's false comparisons to "mass produced" or "big pharma" brand name medications like Lilly's medicines takes center stage on the home page of its website, where Strive claims that its medicines provide "better outcomes" than "the one-size-fits-all approach to medicine" taken by branded drugs.[58]

---

[58]     Strive Pharmacy, https://www.strivepharmacy.com/ (last visited Oct. 21, 2025).

STRIVING SINCE 2018

# We Take Medicine Personally

More than a compounding pharmacy, we're on a mission to flip the personal wellness script. We reject the one-size-fits-all approach to medicine— because more options mean better outcomes. When people are the bottom line, medicine becomes about results, rigor, and reinvention. That's why we're **striving for the personal side of healthcare.**

75.   In addition to being inundated with statements on its homepage about why Strive's personalized medicines are superior to branded medicines, Strive then communicates a similar message to customers who visit its "weight management" page by stating that "compounded weight loss medications are more personalized to the individual's needs," than branded medications like Lilly's medicines, which is immediately followed by Strive's claim that it "compounds popular weight-loss medications such as Semaglutide and Tirzepatide."[59]

76.   Throughout its website, Strive directly compares itself to traditional medicine companies like Lilly, explicitly telling consumers that Strive's products are better for the patient, with less side effects and better outcomes, because they are personalized—unlike Lilly's FDA-approved medicines.

77.   Strive's comparative superiority claims are also the focal point of its social media marketing strategy.  For instance, in a May 2024 video posted on both X and Instagram, Strive's Vice President of Marketing explicitly compares Strive's approach as "more personalized" than "Big Pharma's one size fits all approach."[60]  And, in an October

---

[59]   Strive        Pharmacy,        *Providers – Weight Management*, https://www.strivepharmacy.com/providers/weight-management-medications        (last visited Oct. 21, 2025).

[60]   Strive Pharmacy (@strivepharmacy), *We are driven by a mission…*, X (May 28, 2024,  11:56  AM),  https://x.com/strivepharmacy/status/1795484405882052807;  Strive

2024 Facebook post, Strive states that "Big Pharma can keep its one-size-fits-all approach.  At Strive, we're flipping the script to make healthcare personal, powerful, and tailored just for you."[61]



78.     On LinkedIn, Strive tells consumers that "Big Pharma churns out cookie-cutter medications that work for some, but not all," and that "Big Pharma questions us because we question them.  Where others see a pill, we see an opportunity to optimize your health, your way.  Let's move beyond settling for one-size-fits-all care.  Strive for a future where healthcare feels human."[62]  Strive also invites consumers to "[i]magine medicine designed not just for 'patients' in bulk, but for you."

Pharmacy (strivepharmacy), *We are driven by a mission*, INSTAGRAM (May 28, 2024), https://www.instagram.com/strivepharmacy/reel/C7hHglDR_hj/.

[61]     Strive Pharmacy, *Big Pharma can keep its one-size-fits-all approach.  At Strive, we're flipping the script to make healthcare personal, powerful, and tailored just for you*, FACEBOOK (Oct. 17, 2024) https://www.facebook.com/share/v/1A9KmUMg8n/.

[62]     Strive Compounding Pharmacy, *The healthcare landscape has been dominated by a "take it or leave it" mindset*, LINKEDIN (Dec. 2024), https://www.linkedin.com/posts/strivepharmacy_the-healthcare-landscape-has-long-been-activity-7274869058473279490--LRn/.

> ✳ **Strive Compounding Pharmacy**
> 5,381 followers
> 10mo
>
> 💥 The healthcare landscape has long been dominated by a "take it or leave it" mindset. Big Pharma churns out cookie-cutter medications that work for some, but not all. That's the old way—the inflexible way. Enter Smart Pharma, a game-changer that prioritizes you over profit and treats medicine like what it is: personal.
>
> 💊 Strive is flipping the script with custom-made, rigorously tested medication tailored to real people with real needs. Imagine medicine designed not just for "patients" in bulk, but for you—your sensitivities, goals, and unique life.
>
> Big Pharma questions us because we question them. Where others see a pill, we see an opportunity to optimize your health, your way.
>
> Let's move beyond settling for one-size-fits-all care. Strive for a future where healthcare feels human.
>
> Because life isn't one-size-fits-all. Your medicine shouldn't be either.

79.    Strive's advertising therefore consistently and clearly communicates that the "personalized" nature of its Tirzepatide Blend makes it superior to branded medications such as Lilly's medicines, which are offered in standard formulations.

**2.    *The truth about Strive's Tirzepatide Blend***

80.    In reality, there is nothing "personalized" about Strive's Tirzepatide Blend. On information and belief, Strive's customers each receive the exact same Tirzepatide Blend (*i.e.*, tirzepatide blended with glycine and B12).  In other words, every patient gets the exact same medicine regardless of their alleged individual needs.  Strive does not compound each dose—or any dose—with a customer's unique needs in mind; the doses are prepared at scale in large batches well before they are ever sold to a particular consumer.  Strive does not sell this Tirzepatide Blend in any personalized way—it offers it to customers in a single formulation in standardized doses.

1

2

3

81. Strive's 2024 Drug Catalog—available to providers—confirms that there is no customization. Strive lists only *one* form of injectable tirzepatide for patients or providers to choose. That's all. No custom offering. No personalized choice.[63]

4

5

| MEDICATION | STRENGTH | FORM | CATEGORY | ROUTE | QUANITY | PATIENT $ PRICE | DOCTOR $ PRICE |
|---|---|---|---|---|---|---|---|
| Semaglutide/B12 | 5mg/1mg/mL | Injection | Weight Loss | Injection | 0.5mL 1mL 2mL | $150 $220 $250 | $100 $150 $175 |
| Semaglutide/B12/Chromium Pic/Pyridoxine | 500mcg/100mcg 500mg/12.5mg | Mini Troche | Weight Loss | Oral | Per Troche | $5/Troche | $4/Troche |
| Semaglutide/B12/Chromium Pic/Pyridoxine | 1000mcg/100mcg 500mg/12.5mg | Mini Troche | Weight Loss | Oral | Per Troche | $6/Troche | $5.50/ Troche |
| Semaglutide/B12/Chromium Pic/Pyridoxine | 1500mcg/100mcg 500mg/12.5mg | Mini Troche | Weight Loss | Oral | Per Troche | $8/Troche | $7/Troche |
| Semaglutide/B12/Chromium Pic/Pyridoxine | 2000mcg/100mcg 500mg/12.5mg | Mini Troche | Weight Loss | Oral | Per Troche | $9/Troche | $8.50/ Troche |
| Super MIC (Methionine/ Inositol/Choline/B12/L-Carnitine/Thiamine/Pyridoxine) | 12.4/25/25/1/ 125/50/2 mg/mL | Injection | Weight Loss | Injection | 10mL 30mL | $70 $70 | $60 $60 |
| Tirzepatide/B12 | 10mg/500mcg/mL | Injection | Weight Loss | Injection | 2mL 4mL-10mL | $225 $200/vial | $185 $175/vial |

14

15

16

17

18

19

82. Further demonstrating the lack of customization, on its "New Partnership Registration" webpage, Strive offers "volume-based pricing" for its partner clinics, allowing provider clinics to order in bulk.[64] Medication delivered in a "volume-based" capacity is necessarily *not* compounded specifically per individual patient needs. Thus, Strive's own business practices and statements confirm that Strive is mass-manufacturing drugs to ship to patients and providers.

20

21

22

23

83. In short, rather than making "custom" products tailored specifically to individual patient needs and patient-specific prescriptions where changes result in a clinical difference for that patient, Strive is mass producing its Tirzepatide Blend in exactly the manner it claims it's not.

24

25

26

[63] Decl. of Bret Phillips in Support of Defendants' Opposition to Motion for Preliminary Injunction at 23, *Skin Medicinals LLC v. Optio Rx, LLC, et al.*, No. 24-50079 (Bankr. D. Del. July 2, 2024), ECF No. 50.

27

28

[64] Strive Pharmacy, *New Partnership Registration*, https://www.strivepharmacy.com/partnership (last visited Oct. 8, 2025).

84.     Strive tried to cover its tracks with a flyer that it distributed to its affiliated providers in October 2024.   That flyer confirmed, despite Strive's promises to the contrary, the *lack* of customization.   The flyer was designed to create cover and the illusion of patient-specific prescriptions, when Strive was in fact making the same drug for all patients, despite its claims and purported business practices to the contrary.   In the first two paragraphs of the flyer, Strive explained that it needed providers to follow certain procedures when prescribing tirzepatide and fed its providers stock language for them to include in prescriptions to make it appear as if the prescription is individually based. Strive emphasized: "[p]lease ensure that you follow this guidance for every tirzepatide prescription."



85.     Strive has also told its patients that it requires "proper documentation on the prescription about the provider's clinically significant reasoning" for its GLP-1 drugs,

1    including its Tirzepatide Blend.[65]    But when considered alongside Strive's other

2    statements and conduct—including the distribution of the above flier—it is evident that

3    Strive's "significant difference" prescription requirement is pretextual.

4        86.    Instructing doctors to pretend that there is a patient-specific need for

5    Strive's Tirzepatide Blend reveals that Strive's "personalization" decisions are driven

6    solely to maximize sales, and not by any unique clinical need or individualized

7    assessment.

8        87.    Online consumer posts also confirm that Strive's product is not

9    "personalized" or customized.    On Reddit, one user reported that a patient who was

10   "sensitive to B vitamins" could not use Strive's product.[66]  Another Reddit user also stated

11   that its "regular Strive option is out for me" because they did not want tirzepatide with

12   additives.[67]

13       88.    In addition, Strive does not even "personalize" its "dosages" as it claims to

14   do.  Another Reddit user reported that Strive gets "crazy expensive" at "higher doses,"

15   because "[y]ou have to end up getting multiple vials as all the vials are the same

16   strength."[68]    Put differently, Strive simply sells consumers more vials of the same

17   standardized dosage.  So, despite its claims to the contrary, Strive provides a one-size-

18   fits-all drug—***not*** customizable, tailored, or "personalized" products.

19

20   ---

21   [65]    roguex99, *Email from Strive regarding compounding* (Mar. 18, 2025),
     https://www.reddit.com/r/tirzepatidecompound/comments/1jed7hy/email_from_strive_r

22   egarding_compounding/#lightbox.

23   [66]    Feisty-Feline-1,    Comment    to    *Strive    pharmacy    crazy    pricing?*,
     https://www.reddit.com/r/tirzepatidecompound/comments/1hsztop/comment/m9chg87/

24   (last viewed Mar. 20, 2025).

25   [67]    Rhannonshae,              Comment              to              *Strive*,
     https://www.reddit.com/r/tirzepatidecompound/comments/1icjri8/strive/  (last  viewed

26   Mar. 20, 2025).

27   [68]    Top-Manufacturer-855, Comment to *Online provider that uses Strive pharmacy?*,
     https://www.reddit.com/r/tirzepatidecompound/comments/1d0piiz/online_provider_that

28   _uses_strive_pharmacy/ (last viewed Mar. 20, 2025).

89.    Despite all its promises in its promotion of its Tirzepatide Blend, Strive is simply engaged in mass-manufacturing of its standardized, unapproved drug, and is asking providers to run cover so the deception can continue.  Strive's advertising conveys the undeniable message to consumers that the ***medication*** inside each vial of its tirzepatide combination drug contains a unique blend of ingredients that is "tailored precisely" for each patient, making it superior to branded medications, like Lilly's medicines.  All of that is false.

*        *        *

90.    In short, Strive's personalization claims are literally false, as are its claims that Strive's Tirzepatide Blend is better than Lilly's "standard" medicines because of the alleged personalized nature of Strive's medicine.  As a result, consumers who view Strive's advertising will be deceived into believing that Strive's Tirzepatide Blend is unique to them and superior to other tirzepatide-based medications, like Lilly's medicines, when it is neither of those things.  This deception is material in that it is "likely to influence the purchasing decision of consumers" because it falsely describes inherent qualities or characteristics of drug products—namely, their effectiveness.

91.    Finally, as discussed in more detail below, Strive's personalization claims have proximately caused injury to Lilly.  Strive and Lilly are direct competitors in the market for tirzepatide drug products.  Strive's advertising communicates the clear and false message that Strive's Tirzepatide Blend is superior to Lilly's FDA-approved and clinically tested medicine because it offers an individualized option tailored to each individual patient's needs.  By falsely comparing its Tirzepatide Blend to Lilly's FDA-approved and clinically tested medicines and communicating that Tirzepatide Blend provides superior results, Strive's false advertising has caused a diversion of sales and lost profits from Lilly on those sales.  It has also caused, and continues to cause, harm to Lilly's goodwill, reputation, and standing with the consuming public.  Finally, it exposes the public to the unnecessary risks associated with untested and unproven drugs.

34

**B.    Strive's Advertising Expressly and Impliedly Communicates That Strive's Tirzepatide Blend Has Been Clinically Tested**

92.    Throughout its advertising, Strive expressly and impliedly tells consumers that its Tirzepatide Blend is a clinically tested weight loss treatment.  Advertising that references clinical (or any kind of) testing, either explicitly or implicitly, are considered establishment claims.

93.    An establishment claim is a statement, either express or implied, that the advertiser has performed scientific tests or studies to prove a product's effectiveness or some other particular attribute.  *See, e.g., Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002) (an establishment claim is "an advertisement [that] cites [to] testing").  Establishment claims can be either "explicit[] or implicit[]."  *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir. 1992); *BASF Corp., v. Old World Trading Co.*, 41 F.3d 1081, 1090 (7th Cir.1994) (discussing explicit and implicit establishment claims); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (recognizing the two types of establishment claims within the 9th Circuit).

94.    When an advertiser makes an establishment claim, it must actually have the scientific testing referenced or alluded to in its advertising.  As a result, to prove the literal falsity of an establishment claim, "the plaintiff must prove only that the tests did not establish the proposition for which they were cited."  *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1309 (11th Cir. 2010); *see also Southland Sod Farms*, 108 F.3d at 1139.  An advertising claim purporting to be supported by testing "is per se false without additional evidence from the plaintiff," if the advertiser does not have such tests.  *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 590 (3d Cir. 2002); *Monster Energy Co. v. Vital Pharms., Inc.*, 2022 WL 1599712, at *18 (C.D. Cal. Apr. 19, 2022) (citing *Novartis*, 290 F.3d at 590) (noting that a lack of testing supports a finding of literally falsity).

95.    Circuit courts across the country, including the Ninth Circuit, uniformly recognize the validity of false establishment claims, and hold that a plaintiff satisfies its evidentiary burden of proof at trial under the Lanham Act by showing that the advertiser does not have the tests it claims to have. *See Osmose*, 612 F.3d at 1309 (collecting cases); *Castrol*, 977 F.2d at 63 (where "defendant's ad explicitly or implicitly represents that tests or studies prove its product superior, plaintiff satisfies its burden by showing that the tests did not establish the proposition for which they were cited."); *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare L.P.*, 131 F.3d 430, 435 (4th Cir. 1997) ("When an advertising claim of favorable fact either expressly or impliedly asserts that the fact is [test or] study-validated, the fact of the validation becomes an integral and critical part of the claim. Such a claim may therefore be proven literally false by showing only that the test asserted to validate it did not in fact do so."); *Rhone–Poulenc Rorer Pharms. Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 514–15 (8th Cir. 1996) (similar); *Novartis Consumer Health*, 290 F.3d at 586–87 (similar); BASF Corp., 41 F.3d at 1091 (similar); *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 35 (1st Cir. 2000) (similar); *Southland Sod Farms*, 108 F.3d at 1139 (adopting this standard within the 9th Circuit).

### 1.    *Strive's false establishment claims*

96.    As discussed in detail below, Strive's advertising expressly and impliedly communicates to consumers that Strive's Tirzepatide Blend has been tested and proven safe and effective for weight loss.

97.    Specifically, at the very top of its webpage for its Tirzepatide Blend, Strive boldly and explicitly touts that its medication is "pharmacist developed and tested."[69]

---

[69]    https://www.strivepharmacy.com/medications/tirzepatide-glycine-b12



98.    This statement expressly tells potential patients that Strive has conducted testing on its Tirzepatide Blend.  This false message is reinforced throughout Strive's advertising, both expressly and implicitly.

99.    In particular, Strive claims that patients who use its Tirzepatide Blend can experience "appetite reduction and weight loss . . . within weeks."  It also claims that its Tirzepatide Blend is "formulated with glycine and vitamin B12," to "support side effect management and muscle preservation."[70]

---

[70]    *Id.*

**FAQ**    —

**Q: How long does it take to see results?**

A: Benefits like appetite reduction and weight loss may be observed within weeks, but individual responses vary.

**Q: Can I use this with other medications?**

A: It can be used with other medications, but it should not be used with other GLP-1 medications. Always inform your healthcare provider about all medications you're taking to to address possible interactions.

**Q: Why is it formulated with glycine and vitamin B12?**

A: Cyanocobalamin (vitamin B12) and glycine are added to support side effect management and muscle preservation.

100.    By expressly describing expected outcomes in the context of claims that its products are "tested," Strive falsely and necessarily implies that it has scientific tests that prove that its Tirzepatide Blend will provide the advertised results.  It does not.

101.    Strive further reinforces this false narrative that its Tirzepatide Blend is widely tested and proven effective in its "Strive Guides," which are instructional and promotional materials made by Strive to "help [customers] administer medications with clarity and confidence."[71]  One such Strive Guide entitled "Understanding Your Vial Volume" contains a seal that reads "Tested," "Tailored," "Top Tier," and "Radical Outcomes."[72]

---

[71]    https://www.strivepharmacy.com/instructional-guides

[72]    *Id.*

102. The inclusion of this seal on Strive's consumer-facing communications for its medicines sold in a vial—including its Tirzepatide Blend—necessarily communicates to customers that all of its vial-based products have been "tested" to produce "radical outcomes."

103.    Similar messages are communicated through Strive's social media marketing.  For instance, Strive's LinkedIn claims that it offers "custom-made, *rigorously tested medication*."[73]



104.    In short, Strive's advertising is carefully calculated to convey a singular, consistent, and deceptive message to consumers: Strive's Tirzepatide Blend has been clinically tested and scientifically validated and results in safe and effective weight loss. Strive's express statements that its Tirzepatide Blend has been "tested" and that Strive's medications are "rigorously tested," falsely bolster the scientific legitimacy of its Tirzepatide Blend and expressly and necessarily communicate to consumers that Strive's

---

[73]    Strive Compounding Pharmacy, *The healthcare landscape has been dominated by a "take it or leave it" mindset*, LINKEDIN (Dec. 2024), https://www.linkedin.com/posts/strivepharmacy_the-healthcare-landscape-has-long-been-activity-7274869058473279490--LRn/.

Tirzepatide Blend has been clinically tested and proven to function in the way Strive claims and with the results Strive promises.  It has not.

105.    Not content to simply (yet falsely) tout the alleged clinical testing of its own Tirzepatide Blend, Strive goes further and tells consumers that its Tirzepatide Blend offers superior outcomes for its patients.

106.    For instance, the Tirzepatide Blend page on Strive's website claims that Tirzepatide Blend is compounded with B12 and glycine additives to "support side effect management and muscle preservation."[74]

> Q: Why is it formulated with glycine and vitamin B12?
>
> A: Cyanocobalamin (vitamin B12) and glycine are added to support side effect management and muscle preservation.

107.    Similarly, in a May 2024 video posted to Strive's YouTube account, Strive tells consumers it is "disrupting Big Pharma," by "[showing] the world that **our medications are safer and better for you.**"[75]

---

[74]    Strive    Pharmacy,    *Tirzepatide/Glycine/B12*, https://www.strivepharmacy.com/medications/tirzepatide-glycine-b12 (last visited Oct. 21, 2025).

[75]    Strive Compounding Pharmacy, *We're Strive Compounding Pharmacy, of course, we're disrupting big pharma.*, YOUTUBE (May 28, 2024), https://www.youtube.com/watch?v=WqMLc3UJ9tQ (emphasis added).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18    108.    The necessary and false implication of these statements is that Strive's

19  Tirzepatide Blend has been clinically tested and proven to be safer than other tirzepatide-

20  based medications, like Lilly's medicines, and to result in less side effects.  They have

21  not.

22            **2.    *The truth about Strive's Tirzepatide Blend***

23    109.    As a result of its promise to consumers that it has testing on the safety and

24  effectiveness of its Tirzepatide Blend, Strive is required to have such testing.  If it has no

25  such testing, its claim is per se false.  *Novartis,* 290 F.3d at 590; *Monster Energy,* 2022

26  WL 1599712, at *18.

27    110.    In fact, Strive does not have any clinical testing assessing the scientific

28  mechanism, function, safety, or effectiveness of its Tirzepatide Blend. Without the very

1    testing it advertises that it has, Strive's advertising is false, and Lilly need not prove

2    anything further. *Novartis,* 290 F.3d at 590; *Monster Energy,* 2022 WL 1599712, at *18.

3                                  *        *        *

4        111.    At base, Strive's establishment claims—*i.e.*, those claims that expressly and

5    impliedly refer to rigorous testing establishing the side-effect profile or efficacy of its

6    compounded drugs—are literally false, because no such testing exists.  As a result,

7    consumers who view Strive's advertising will be deceived into believing that Strive's

8    Tirzepatide Blend has been proven safe and effective through clinical testing when it has

9    not.  This deception is material in that it is likely to influence the purchasing decision of

10   consumers because it falsely describes inherent qualities or characteristics of drug

11   products—namely, their safety and effectiveness.

12       112.    As discussed in detail below, Strive's  false establishment claims have

13   proximately caused injury to Lilly.  Strive and Lilly are direct competitors in the market

14   for tirzepatide drug products.  Lilly has invested millions of dollars on clinical testing of

15   its products to ensure they are safe to use and effective for achieving certain therapeutic

16   results.  Strive has never performed a clinical test on its Tirzepatide Blend.  Yet Strive's

17   express clinical testing claims falsely and unfairly place Strive's Tirzepatide Blend on the

18   same playing field as Lilly's FDA-approved and clinically tested medicines by

19   communicating to consumers that Strive's Tirzepatide Blend is as safe and effective as

20   Lilly's medicines and that its safety and effectiveness have been proven by clinical studies

21   of Strive's Tirzepatide Blend.  It is not.  Moreover, Strive's advertising communicates the

22   clear and false message that Strive's Tirzepatide Blend provides better results than other

23   tirzepatide-based medications, including Lilly's medicines; and given that Lilly and

24   Strive sell to the same market at comparable price points, Strive's false advertising has

25   caused a diversion of sales and lost profits from Lilly on those sales.  It has also caused,

26   and continues to cause, harm to Lilly's goodwill, reputation, and standing with the

27   consuming public, and exposes the public to the unnecessary risks associated with

28   untested and unproven drugs.

43

1

2

## IV.    STRIVE'S UNLAWFUL CONDUCT HAS OR IS LIKELY TO CAUSE COMMERICAL INJURY AND HARM TO LILLY

3

4

5

6

7

8

9

10

11

12

13

113.    Strive and Lilly are direct competitors in the marketplace.  Strive not only directly competes with Lilly for customers interested in GLP-1 treatments, but Strive's treatment also purports to contain tirzepatide, the same active ingredient as Lilly's MOUNJARO® and ZEPBOUND®.  Strive's marketing also takes aim specifically at "Big Pharma," which is a clear reference to Lilly and its FDA-approved products.  Thus, Lilly has standing to bring this challenge to Strive's advertising.  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011) ("[W]hen plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing."); *Adonis Health, Inc.*, 2025 WL 2721684, at *3 ("Lilly and Henry are direct competitors in the market for tirzepatide products because Henry and Lilly market and sell tirzepatide-containing drugs . . . to the same potential customers, i.e., they vie for the same dollars form the same consumer group.").

14

15

16

17

18

19

20

114.    Strive's false, deceptive, and reckless promotion and sale of its tirzepatide product have harmed consumers and Lilly.  The harm to Lilly is concrete and particularized and will continue if left unchecked.  **First,** Strive's false advertisements create an association in the minds of consumers between its drug and Lilly's MOUNJARO® and ZEPBOUND® that continues to harm Lilly's goodwill and reputation.  **Second,** Strive's false and misleading statements are the proximate cause of Lilly's lost sales of MOUNJARO® and ZEPBOUND®.

21

22

### A.    Strive's Advertisements Have Caused Harm to Lilly's Goodwill and Reputation

23

24

25

26

115.    Strive's false and misleading statements cause harm to Lilly's reputation and goodwill.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014) (the Lanham Act confers standing on a plaintiff where "the defendant damages the [plaintiff's] product's reputation.").

27

28

116.    As an initial matter, under the Trademark Modernization Act of 2020, Congress amended Section 34(a) of the Lanham Act to clarify and codify that there is a

1    presumption of irreparable harm in requests for injunctive relief under the Lanham Act,

2    and that extends to all false advertising claims brought under the Lanham Act, including

3    literally false claims, impliedly false claims, and claims about a defendant's own products

4    or services.    Thus, when Lilly proves Strive's claims are false, it is entitled to a

5    presumption of harm.

6        117.    Next, Strive is making claims of superiority over Lilly's "one-size-fits-all"

7    tirzepatide-based medicines and promising better results from Strive's product, meaning

8    the harm to Lilly's reputation is real.  Lilly is the only company that makes FDA-approved

9    tirzepatide medicines.    This means that when Strive degrades "one-size-fits-all"

10   tirzepatide medicines and promises that its "personalized" drug offers superior results,

11   Strive necessarily degrades Lilly's product and harms its reputation as a manufacturer of

12   effective, FDA-approved medicines.

13       118.    Moreover, on information and belief, when Strive deceives patients into

14   believing that its compounded products are made with their unique needs in mind—while

15   contrasting Strive's practices with the more traditional medicine companies—consumers

16   will necessarily conclude that Lilly's FDA-approved tirzepatide medicines, which come

17   in 18 different administrations, are one-size-fits-all medicines that do not effectively

18   address their medical needs.  And to the extent Strive's product is unsafe or ineffective,

19   these statements cause patients to believe that Lilly's tirzepatide is unsafe and ineffective

20   (when it is not), undermining Lilly's brand and customer goodwill.

21       119.    In fact, consumers have contacted Lilly to report adverse events from taking

22   compounded products.    Consumers have also reported that taking compounded

23   tirzepatide has resulted in trips to the emergency room and hospitalization.  They have

24   also reported receiving compounded tirzepatide without information regarding proper and

25   safe administration and storage of the medicine, and even received packages with

26   improperly stored medicine.  In multiple such cases, consumers have reported that they

27   were not aware that they had been taking compounded tirzepatide.  Consumers have also

28

1  reported feeling scammed after finding out that they were not taking Lilly's FDA-
2  approved medicines.

3      120.    Such reports have been made to Lilly about Strive's product.  One consumer
4  notified Lilly that a patient taking Strive's Tirzepatide Blend experienced depression and
5  suicidal ideation for 24 hours following the injection.  Similarly, a different consumer
6  reported headaches and hunger pains from Strive's Tirzepatide Blend.  The same
7  consumer reported to Lilly that Strive's Tirzepatide Blend did not work.  Another
8  consumer reported that she was instructed by Strive to *freeze* vials of its Tirzepatide
9  Blend.  Several other consumers have asked Lilly what ingredients are contained in
10 Strive's Tirzepatide Blend, whether Strive's Tirzepatide Blend is the correct color, and
11 whether Strive's compounded Tirzepatide Blend is equivalent to ZEPBOUND®.

12     121.    None of this is surprising.  Independent medical studies have consistently
13 shown "significantly higher reporting odds of several [adverse events], including
14 abdominal pain, diarrhea, nausea, suicidality, and cholecystitis," as well as "higher
15 reporting odds of hospitalization, related to GI events" for users of compounded drugs.[76]
16 False advertising of the kind Strive engages in proximately causes customers to associate
17 their negative experiences with compounded tirzepatide—like Strive's Tirzepatide
18 Blend—with Lilly.  The fact that Lilly receives these calls about compounded drugs that
19 it does not make or endorse shows that consumers associate compounded tirzepatide
20 drugs with Lilly and its products, harming Lilly's reputation, and the severity of the events
21 reported makes clear that false promise made by compounded tirzepatide sellers like
22 Strive cause serious harm to the reputation and goodwill that Lilly has built in its brand.

23
24
25
26

27  [76]    Kenneth L. McCall et al., *Safety analysis of compounded GLP-1 receptor agonists:*
28  *a pharmacovigilance study using the FDA adverse event reporting system*, Expert
     Opinion on Drug Safety (Apr. 29, 2025), https://pubmed.ncbi.nlm.nih.gov/40285721.

**B.     Strive's False Advertisements Proximately Caused Lilly's Harm Through Lost Sales**

122.    The widespread false advertising of compounded drugs, including by Strive, has diverted sales from Lilly.  In December 2024, the Association for Pharmacy Compounding (APC) acknowledged that forty compounding pharmacies had "collectively dispensed 125,000 compounded tirzepatide prescriptions over the past month."[77]  According to APC, this represented "a fraction of compounders preparing these medications."[78]  To put this in perspective, FarmaKeio, a compounding pharmacy, stated that it would suffer "$1,750,000-$2,000,000 in lost revenue per month" due to FDA removing tirzepatide from the shortage list.[79]  FarmaKeio only has three locations, including a 16,000 square-foot facility in Arkansas.[80]  Strive has *eight* locations, including a 50,000 square-foot facility in St. Louis, Missouri.[81]

123.    Lilly has lost sales due to Strive's false advertisements in particular.  As previously discussed, Strive has fed healthcare providers stock language to include in prescriptions for Strive's Tirzepatide Blend.[82]  In that flyer, Strive provided a roadmap for prescribers to write pretextual prescriptions for compounded tirzepatide products

---

[77]    FDA, *Resolution of Tirzepatide Injection Product Shortage and Supply Status* (Dec. 19, 2024), https://www.fda.gov/media/185577/donwload (quoting Letter from Tenille Davis, OFA Chief Advocacy Officer to FDA Commissioner Robert Califf et al. (Dec. 17, 2024).

[78]    *Id.*

[79]    *Decl. of Dan DeNui in Supp. Of Pls.' Mot. for Prelim. Injun. And Stay Pending Review, Outsourcing Facilities Ass'n et al.*, 24-cv-953, Dkt. No. 67, ¶ 19 (App. 002-003) (N.D. Tex. Jan. 28, 2025).

[80]    *FarmaKeio Custom Compounding Invests $2.2.M and Adds 74 Jobs in Conway Expansion*, Conway Area Chamber of Commerce (Oct. 20, 2023), https://conwaychamber.org/news/farmakeio-custom-compounding-invests-2-2m-and-adds-74-jobs-in-conway-expansion/

[81]    *Strive Compounding Pharmacy Acquires 50,000 sq. ft. Facility in St. Louis for Turnkey Telehealth Compounding and Fulfillment*, Yahoo News (Oct. 30, 2024), https://finance.yahoo.com/news/strive-compounding-pharmacy-acquires-50-130000030.html.

[82]    *See supra* III.A.2.

1     instead of obtaining name-brand medicines (*i.e.*, Lilly's MOUNJARO® or

2     ZEPBOUND®) from suppliers other than Strive. Thus, Strive clearly attempted to (and

3     did) divert patients from Lilly's FDA-approved medicines under the guise that Strive sells

4     a "tailored" product. But for these false promises, consumers would choose Lilly's FDA-

5     approved, clinically tested, proven safe and effective medications.

## CAUSE OF ACTION

**False or Misleading Advertising and Promotion**

**In Violation of 15 U.S.C. § 1125(a)(1)(B)**

9     124. Lilly repeats and realleges each and every allegation above as if fully set

10     forth herein.

11     125. Strive's commercial advertising claims described herein are false or

12     misleading in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. §

13     1125(a)(1)(B). Strive falsely and misleadingly tells consumers that its Tirzepatide Blend

14     is a custom-made product based on a specific patient's needs when it is not, and that

15     Tirzepatide Blend has been clinically tested and proven to be safe and effective for weight

16     loss when it has not.

17     126. Strive has made materially false descriptions of fact, as well as false or

18     misleading representations of fact to sell its tirzepatide combination product. These

19     representations include but are not limited to: (1) Strive's Tirzepatide Blend being

20     "personalized," or "customized" for a specific patient; and (2) Strive's Tirzepatide Blend

21     being clinically tested and proven to be safe and effective for weight loss. These

22     representations have influenced and are likely to continue influencing purchasing

23     decisions—specifically, decisions to purchase Strive's Tirzepatide Blend instead of

24     Lilly's medicines.

25     127. Strive's false and misleading statements and business practices actually

26     deceive or have the tendency to deceive consumers.

27     128. Strive has caused its false and misleading statements to enter interstate trade

28     or commerce.

129.    As a direct and proximate result of Strive's false and misleading statements and practices, Lilly is suffering immediate and continuing irreparable injury for which there is no adequate remedy at law.

130.    As a direct and proximate result of Strive's false and misleading statements and practices, Lilly has suffered and will continue to suffer monetary damages and discernible competitive injury by the loss of goodwill.

131.    Given Strive's conduct, this is an exceptional case under 15 U.S.C. § 1117.

132.    Lilly is entitled to injunctive relief as well as monetary damages, and other remedies provided by Sections 1116, 1117, and 1118, including treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

## JURY DEMAND

Lilly hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lilly prays that this Court enter judgment in its favor on its claim for relief set forth above and award it relief including, but not limited to, the following:

1.    An Order declaring that Strive engaged in false and deceptive advertising and promotion, in violation of 15 U.S.C. § 1125(a)(1)(B).

2.    An injunction preliminarily and then permanently enjoining and restraining Strive and its officers, agents, servants, employees, and attorneys and all persons acting in concert or participation with any of them, from:

a)    Marketing, promoting, or advertising to consumers its Tirzepatide Blend in the manner that it is currently marketed or in any way that suggests it is custom-made, tailor-made, personalized, or changed for an individual patient's specific needs as determined by a prescriber; and

b)    Marketing, promoting, or advertising to consumers its Tirzepatide Blend in the manner that it is currently marketed or in any way that

suggests it is clinically tested to be safe and effective for weight loss and/or to offer superior benefits to Lilly's tirzepatide medicines.

3. An Order requiring Strive and its officers, agents, servants, employees, and attorneys and all persons acting in concert or participation with any of them, to engage in corrective advertising by informing consumers that:

a) Strive's Tirzepatide Blend is not custom-made, tailor-made, personalized, or changed for an individual patient's specific needs as determined by a prescriber; and

b) Strive's Tirzepatide Blend has not been clinically tested to be safe and effective for weight loss.

4. An Order directing Strive to file with this Court and serve on Lilly's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the Court's injunction.

5. An Order requiring Strive to account for and pay to Lilly any and all profits arising from the foregoing acts of false advertising pursuant to 15 U.S.C. § 1117 and other applicable laws.

6. An Order requiring Strive to pay Lilly compensatory damages in an amount as yet undetermined caused by the false or misleading advertising practices and trebling in accordance with 15 U.S.C. § 1117 and other applicable laws.

7. An Order for pre-judgment and post-judgment interest on all damages.

8. A finding that Strive's actions are exceptional under 15 U.S.C. § 1117.

9. An Order requiring Strive to pay Lilly's costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

10. Other relief as the Court may deem appropriate.

/ / /

/ / /

50

DATED this 22nd day of October, 2025.

OSBORN MALEDON, P.A.


By *s/ Eric M. Fraser*
   David B. Rosenbaum
   Eric M. Fraser
   2929 North Central Avenue, Suite 2000
   Phoenix, Arizona 85012-2794

KIRKLAND & ELLIS LLP

   James F. Hurst  (*pro hac vice* forthcoming)
   Diana M. Watral (*pro hac vice* forthcoming)
   Robin McCue (*pro hac vice* forthcoming)
   Ryan Moorman (*pro hac vice* forthcoming)
   James Hileman (*pro hac vice* forthcoming)
   333 West Wolf Point Plaza
   Chicago, Illinois 60654

Attorneys for Plaintiff